**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATEO DIAZ SUESCUN,<br>Petitioner,<br>v.<br>WARDEN, ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | Case No. 5:26-cv-06575-MBK<br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Mateo Diaz Suescun, a citizen of Colombia, is currently in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Mx.[1] Diaz Suescun first entered the United States in April 2023 and timely applied for asylum. Mx. Diaz Suescun fears violence and persecution in Colombia on grounds of their sexual orientation and gender identity. Mx. Diaz Suescun's asylum application has been pending with the United States Immigration and Citizenship Services ("USCIS") since April 25, 2024. USCIS granted Mx. Diaz Suescun lawful employment status on October

[1] The Court uses Petitioner's pronouns and personal identifiers. *See* Dkt. 1 at 7, n. 1.

24, 2024, valid until October 21, 2029. Since December 2023, Mx. Diaz Suescun has lived at a fixed and known address in San Francisco. They have no criminal history in this country.

On October 24, 2026, Mx. Diaz Suescun boarded a domestic flight from San Francisco to Los Angeles. Upon landing in Los Angeles, Immigration and Customs Enforcement ("ICE") officials arrested Mx. Diaz Suescun on the ground that they overstayed a tourist visa. Mx. Diaz Suescun has been detained at the Adelanto Detention Facility ever since. In this habeas action, Mx. Diaz Suescun argues that their ongoing detention violates the Due Process Clause, 8 U.S.C. § 1357, and 8 C.F.R. § 287.3(d). Respondents oppose immediate release but concede that Petitioner is eligible for an initial bond hearing under 8 U.S.C. § 1226(a). For the reasons that follow, the Court concludes that Petitioner's sudden detention—without notice, a hearing, or any material changed circumstances—violated due process and Mx. Diaz Suescun is entitled to release.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner Mateo Diaz Suescun is a citizen and national of Colombia. Dkt. 7-1 at 4. Petitioner is HIV-positive and identifies as gay and non-binary. Dkt. 1 at 15. Petitioner left Colombia in or around April 2023, after suffering years of physical abuse, sexual abuse, and threats to their life because of their LGBT identity. *Id.* at 15-16. Petitioner escaped to the United States after being raped by a Colombian military officer and being beaten, threatened, and cut with a knife by other people at the officer's behest. *Id.*

Petitioner first entered the United States on April 25, 2023, with a B-2 tourist visa authorizing their stay until October 24, 2023. *Id.* at 16; Dkt. 7-1 at 4. They resided in Florida for about two months before moving to San

Francisco. Dkt. 1 at 16. They struggled with housing insecurity for about six months before finding an affordable apartment in San Francisco in or around December 2023.[2] *Id.* They have been living at that address ever since. *Id.* Petitioner has no criminal history in the United States. *Id.*

Petitioner filed for asylum with USCIS on April 25, 2024. *Id.*; Dkt. 7-1 at 4. The asylum application listed Petitioner's residential address. Dkt. 1 at 16-17. On October 24, 2024, USCIS approved Petitioner for employment authorization and granted Petitioner lawful employment status until October 21, 2029. *Id.* at 16.

On October 24, 2026, Petitioner boarded a domestic flight from San Francisco to Los Angeles with the intent of visiting a friend. *Id.* at 17. Petitioner planned on returning to San Francisco via Amtrak train two days later. *Id.* Upon exiting the plane in Los Angeles, Petitioner was approached by four ICE agents in plainclothes. *Id.* Petitioner was ultim[3]ately arrested and transported to the Adelanto Detention Facility, where they remain detained. Dkt. 1 at 18.

Petitioner reports severe medical vulnerability while in detention. *Id.* at 19. Petitioner is HIV-positive and has been undergoing a bimonthly treatment of Cabenuva, an injectable HIV medication. *Id.* at 20. Before being detained, Petitioner was scheduled for their next dose of Cabenuva on October 26, 2026. *Id.* However, detention center officials have instead been inconsistently providing Petitioner a different HIV medication, a daily pill called Biktarvy, which their body is not used to. *Id.* As a result, Petitioner has been suffering side effects, including headaches, stomach pains, nausea, and insomnia. *Id.*

---

[2] The Petition states December 2024, however, the timeline and context suggests this is a typographical error.

[3] The parties dispute whether Petitioner was presented with a warrant or a timely Notice to Appear ("NTA") in immigration court. *Compare id.* at 18 *with* Dkt. 7-1 at 3-4.

Petitioner was also undergoing gender-affirming care before being detained, which included a doctor-prescribed treatment of estrogen. *Id.* at 21. Petitioner was informed by detention center officials that any gender-affirming care would be unavailable for three months. *Id.* As a result, Petitioner fears medically de-transitioning. *Id.* Petitioner also reports severe non-medical harm, including losing their affordable housing if they are unable to work and pay rent while in detention. *Id.* at 21-22.

Petitioner filed the instant habeas petition on November 4, 2026. Dkt. 1. They argue (1) their detention without reasonable relation to any legitimate government purpose violates substantive due process; (2) their detention without notice, a pre-deprivation hearing, opportunity to contest, or explanation of any change in circumstance violates procedural due process; (3) their arrest without a warrant or a finding of escape risk violates 8 U.S.C. § 1357; and (4) their arrest and detention without a charging document violates 8 C.F.R. § 287.3(d). *Id.* at 33-36. Petitioner requests immediate release. *Id.* at 37-38.

Respondents filed their answer on November 9, 2026. Dkt. 7. They oppose immediate release because this is Petitioner's first detention of a visa overstay. *Id.* at 2. Respondents assert Petitioner was in fact arrested pursuant to a warrant and was served with a NTA pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(C). *Id.* However, Respondents did not produce the documents, instead solely attaching a copy of Petitioner's Form I-213 (Record of Deportable/Inadmissible Alien). Dkt. 7-1. Respondents nevertheless indicate that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and appears to be entitled to an initial bond hearing. *Id.* at 2-3. Respondents also oppose relief on grounds that Petitioner had not yet properly exhausted all available administrative remedies. *Id.* at 3.

Petitioner filed a reply on November 11, 2026. Dkt. 11. They first argue that exhaustion is not required, particularly given Petitioner's ongoing and irreparable medical harms. *Id.* at 2-3. Petitioner contests the accuracy of Respondents' provided Form I-213 and re-iterates that Respondents still have not produced the warrant or NTA, if they exist. *Id.* at 4-6. Petitioner again requests immediate release. *Id.* at 8.

## II. DISCUSSION

Petitioner argues that their ongoing detention violates due process, 8 U.S.C. § 1357, and the statute's implementing regulations. The Court begins by addressing Respondents' argument that the Petition should be denied due to Petitioner's failure to exhaust their claims before turning to the merits of Petitioner's claims.

### A. Waiver of Exhaustion is Appropriate

Respondents argue that the Court should decline to address Petitioner's claims because Petitioner has not yet exhausted all available administrative remedies—namely, requesting a bond hearing. Dkt. 7 at 3.

While administrative exhaustion is not a jurisdictional requirement for habeas petitions filed under 28 U.S.C. § 2241, courts typically "require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241" as a "prudential matter." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v.*

*Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000 (internal quotations and citations omitted).

The Court finds that Petitioner has shown a waiver of exhaustion is warranted. Petitioner argues that he is entitled to release because their arrest and detention violate procedural and substantive due process. The immigration courts would not consider such claims because they do "not have jurisdiction to determine the constitutionality of the statutes it administers." *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006); *In Re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997) ("It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer."). Administrative exhaustion of Petitioner's due process claims would therefore be futile.

Petitioner would also suffer irreparable harm if forced to exhaust their claims in the Immigration Courts. Petitioner is HIV positive and has lost access to their usual course of medication. Dkt. 1 at 9. The detention center has provided an alternative, but it is inconsistently provided and has caused severe adverse side effects. *Id.* at 19-20. HIV-positive individuals are also immunocompromised and must take specific steps to maintain their health—steps that Petitioner is unable to take while detained. *Id.* at 20-21. Furthermore, detention center officials have denied Petitioner access to their doctor-prescribed estrogen treatment for at least three months. *Id.* at 21.

Respondents do dispute any of Petitioner's factual assertions regarding these injuries.

Accordingly, the Court exercises its "discretion to waive a prudential requirement" because it would be futile and "irreparable injury will result." *Laing*, 370 F.3d at 998, 1000.

**B. Petitioner's Detention Violates Due Process**

Petitioner argues they are entitled to immediate release from custody because, *inter alia*, they were deprived of their liberty without adequate due process. Dkt. 1 at 33-35. The Court finds that Petitioner's ongoing detention violates due process.

This Court has previously found that, under the framework of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), noncitizens in circumstances comparable to Petitioner were entitled to release because their re-detention without a hearing or a material change in circumstances violated due process. *See, e.g.*, *Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-cv-03595-MBK, 2026 WL 2058437, at *1 (C.D. Cal. July 14, 2026); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026).

Courts have extended these principles to cases in which a noncitizen had not been released from immigration custody previously, but where the record indicates that the Government "deliberate[ly] acquiesce[d]" in the noncitizen's remaining at liberty in the United States. *See Martinez v. Acting Warden of the Adelanto Detention Center*, No. 5:26-cv-02635-ACCV, 2026 WL 2262269, at *5 (C.D. Cal. Aug. 5, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (holding that a visa overstayer with a pending asylum application "possesses a constitutionally

protected liberty interest that the Government cannot extinguish without affording pre-deprivation process"); *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (concluding that noncitizen who overstayed nonimmigrant visa and entered removal proceedings, but was never detained, had a protected liberty interest in remaining free).

This case is analogous. Petitioner became subject to detention under 8 U.S.C. § 1226(a) after their B-2 visa expired. However, the Government elected not to detain them and instead granted them employment authorization while their asylum case remains pending. Dkt. 1 at 16-17. For the past several years, Petitioner has awaited progress on their asylum claim, has not had any arrests or convictions, and has resided at a fixed address known to the Government. Throughout this time, the Government permitted Petitioner to remain at liberty. Under these circumstances, the Court finds that Petitioner's detention without a pre-deprivation hearing or a material change in circumstances violates due process.

Respondents oppose immediate release but state that "Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026)" under 8 U.S.C. § 1226(a). Dkt. 7 at 2. However, most courts to address the issue—including this one—have "concluded that a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Nurlan Gudavasov v. David Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); *Orellana-Rivera v. J. Johnson*, 5:26-cv-2116-HDV-AJR, Dkt. 18 at 2 (C.D. Cal. May 14, 2026) (observing that an "increasing wave of district courts have concluded, a post-hoc bond hearing" is insufficient

to remedy the denial of a petitioner's right to pre-deprivation process and ordering the petitioner's release).

These decisions reason that a post-deprivation hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *Khalsa v. Janecka, et al.*, No. 5:26-cv-00623-CAS-AGR, 2026 WL 486670, at *7 (C.D. Cal. Feb. 19, 2026) (quoting *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025)). *See also Mendoza v. Adelanto ICE Processing Center Warden*, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026) ("allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless"); *Hector Jose Martinez Lopez v. Dep't of Homeland Sec. et al.*, No. 25-cv-03607-KK-ADS, 2026 WL 1365980, at *7 (C.D. Cal. Apr. 23, 2026) ("a post-detention bond hearing would offer little more than cold comfort to Petitioner, whose erroneous deprivation of liberty, along with the concomitant damage to his mental health and impact on his family, has already taken place") (cleaned up).

"[T]he purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). Accordingly, a person who has suffered a constitutional violation should ordinarily be returned "to the status quo, or 'the last uncontested status which preceded the pending controversy.'" *V.K. v. Noem*, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at

*5 (C.D. Cal. Jan. 25, 2026) (quoting *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026)); *Chowdhury v. Lyons*, No. 5:26-cv-01252-MEMF-E, 2026 WL 1045562, at *7 (C.D. Cal. Apr. 13, 2026) ("prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections"). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Moreover, Petitioner was likely prejudiced by being forced to litigate the legality of their confinement from inside a detention center over the past month. As numerous courts have recognized, detention makes it more difficult for noncitizens to access counsel and obtain evidence. *See generally Biwot v. Gonzales*, 403 F.3d 1094, 1099 (9th Cir. 2005) (discussing the difficulty of obtaining legal representation for an "incarcerated immigrant"); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 778 (N.D. Cal. 2019) (discussing the "substantial challenges" faced by a noncitizen attempting to litigate a removal case while detained). Here, Petitioner has explained how they have suffered numerous medical issues while detained, particularly with regards to their HIV-positive status. Dkt. 1 at 19-22. Petitioner is also confined in Adelanto, California, far from their home and support network in San Francisco. Under these circumstances, the Government's denial of pre-deprivation process certainly "might" have led to an erroneous deprivation of their liberty. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (finding that the petitioner was entitled to habeas relief where he was prejudiced by an IJ's

application of the incorrect standard of proof at his bond hearing because it "might" "have affected the outcome of the bond hearing").

Accordingly, the Court finds that Petitioner is entitled to release due to Respondents' violation of their due process rights.[4]

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Mateo Diaz Suescun's (A# 242-317-671) immediate release subject to the same conditions of supervision that applied prior to their arrest and prohibiting Petitioner's re-detention absent notice and a hearing before a neutral decisionmaker at which the Government must show material changed circumstances warranting detention; and (3) Respondents shall file a status report no later than three (3) days from the date of this Order confirming Petitioner's release from custody in compliance with this order.

Dated: November 12, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

[4] Because the Court finds that Petitioner is entitled to release on procedural due process grounds, it declines to address their other claims.